56 So.2d 901 (1952)
STATE ROAD DEPT.
v.
FOREHAND et al.
Supreme Court of Florida, en Banc.
February 12, 1952.
*902 Talbot Whitfield, Gilbert A. Smith and Ross H. Stanton, Jr., all of Tallahassee, for appellant.
Cecil G. Costin, Jr., Port St. Joe, for appellees.
TERRELL, Justice.
June 6, 1951, the State Road Department filed its Declaration of Taking in the Circuit Court as authorized by Chapter 74, Florida Statutes 1949, F.S.A., Chapter 20304, Acts of 1941. The Declaration of Taking institutes a proceeding collateral to and supplemental to eminent domain proceedings as authorized by Chapter 73, Florida Statutes 1949, F.S.A. It is in no sense an abrogation of or substitute for the latter. Process was served on the defendants and appraisers were appointed with directions to make report to the Circuit Court as the act requires. Defendants moved to dismiss the declaration of taking. The motion to dismiss challenges the constitutional validity of Chapter 74. No other question was presented. The Circuit Court certified the question to this Court for determination under Rule 38, 30 F.S.A.
The purpose of Chapter 74, Florida Statutes 1949, F.S.A. was to provide a summary method to secure possession of property for public purposes pending condemnation proceedings, at the same time meet the requirements of due process. Section 2, Chapter 10118, Acts of 1925 provided such a method but it was declared invalid in Spafford v. Brevard County, 92 Fla. 617, 110 So. 451. So the real purpose of this suit is to determine whether or not Chapter 74 overcame the infirmity declared to exist in Chapter 10118, Acts of 1925 by the Spafford case.
A majority of the Court have agreed to answer this question because of its general public importance. Its constititional validity is squarely presented and thoroughly briefed. It presents a pure question of law, unincumbered by factual considerations. Our answer will dispose of the case. Procedural and no other reasons are urged against its consideration. If it is valid it will be of material aid to the counties and the State Road Department in dispatching public projects. Schwob Company of Fla. v. Florida Industrial Commission, 152 Fla. 203, 11 So.2d 782.
Chapter 74, Florida Statutes 1949, F.S.A. is limited in application to the State of Florida, State Road Department, Counties and incorporated municipalities. In Spafford v. Brevard County we held Section 2 of Chapter 10118, Acts of 1925 bad because it provided for the condemnation of private property for public use upon the making of a deposit to pay for the lands, determined on ex parte affidavits without notice to the owner of the property. This procedure, the court held, was such a restriction on judicial inquiry as to deny the owner due process.
To cure this infirmity Chapter 74 requires the petitioner to file in the appropriate court a declaration of taking which shall contain in detail (1) the authority and purpose for which the lands are taken. (2) A complete description and estate or interest held by the owner in the lands. (3) The last preceding assessment for State, County and municipal taxes. (4) A statement of the sum estimated to be just compensation for the land taken. Section 1, of Chapter 20304 also provides for (1) Notice to all parties interested in the lands taken. (2) Authorizes the Court to designate appraisers and provides for the interested parties to be heard and introduce evidence. The Court is then required to hear and consider the report of the appraisers and the testimony of the parties. (3) The parties may be represented by counsel and may introduce evidence as to value of the property. The Court may take testimony and determine whether or not petitioner is exercising the authority delegated to it by the Act in taking the property. (4) After the taking of testimony the Court shall make such order as proper to secure the rights of all parties. If it finds that petitioner is entitled to the use of the property *903 before final judgment it shall require a deposit in the registry of the Court not less than double the value fixed by the appraisers. Other parts of the act provide for the vesting of title, adjustment of compensation, trial by jury, that no law for the taking of property for public use shall be abrogated and finally provides means for enforcing the judgment.
Whether or not the provisions of Chapter 74 cured the infirmity in Chapter 10118, Acts of 1925, depends on whether or not, after the provisions detailed above it runs afoul of Section 12, Declaration of Rights or Section 29, Article XVI of the Constitution, F.S.A. The applicable parts of Section 12, Declaration of Rights is as follows: "* * *, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken without just compensation." Section 29, Article XVI, is as follows: "No private property, nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money; which compensation, irrespective of any benefit from any improvement proposed by such corporation or individual, shall be ascertained by a jury of twelve men in a court of competent jurisdiction, as shall be prescribed by law."
The opinion in Spafford v. Brevard has much to say about these two provisions of the Constitution but the holding of the count on first consideration was to the effect that Chapter 10118 was in violation of both Section 12, Declaration of Rights and Section 29, Article XVI of the Constitution. On rehearing this holding was modified, some of the Justices limiting invalidity to a violation of Section 12, Declaration of Rights, while others did not think Section 29, Article XVI had any relation to the situation presented. The writer of this opinion is of the view that compliance with Section 12, Declaration of Rights is all that is required to secure possession of lands for the purposes contemplated by Chapter 74. I do not think Section 29, Article XVI of the Constitution is pertinent to this case but it is not necessary to adjudicate that point at this time because Chapter 74 may be construed to meet the requirements of either provision of the Constitution.
In the execution of public contracts for roads, streets, public buildings and other public projects it is often highly important to acquire the use of lands on short notice. Chapter 74 provides nothing more than a summary process for doing this in order that urgent public projects may proceed while the act of condemnation is being carried out. Chapter 74 preserves to the owner every right vouchsafed to him by Section 12, Declaration of Rights, Section 29, Article XVI of the Constitution, or the Fourteenth Amendment to the Federal Constitution. In fact, in so far as this case is concerned, the Fourteenth Amendment to the Federal Constitution requires no more than Section 12, Declaration of Rights.
Notice to the parties, the appointment of appraisers, the submission of testimony, the right to be represented by counsel and a determination by the court of whether or not these things have been done are all required before possession of the land is turned over to the petitioner, including a deposit in the registry of the court of no less than twice its appraised value. If the owner is not satisfied with the amount awarded he is entitled to object and the right of trial by jury is preserved. In making his order affecting possession the court has ample power to include all costs, attorney's fees or any other loss the owner may sustain, account of depreciation in contiguous lands or buildings by reason of the condemnation. In other words, "just compensation" as contemplated by Section 12, Declaration of Rights or "full compensation" as contemplated by Section 29, Article XVI of the Constitution is assured the land owner.
It appears from comparison that Chapter 74 is almost identical with the Federal Statute designed for the same purpose and which has been repeatedly upheld by the Federal Courts. Backus v. Fort St. Union Depot Co., 169 U.S. 557, 18 S.Ct. 445, 42 L.Ed. 853; Dohany v. Rogers, 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904, 68 A.L.R. *904 434; Joslin Mfg. Co. v. City of Providence (Scituate Light & Power Co. v. City of Providence), 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167 and Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135. It is true that under the Federal Statute the owner has a right of action against the United States in the court of claims if full compensation is not allowed him, but it is also true that Chapter 74 provides that if the amount paid into the registry of the Court should not be equal to the amount awarded by the jury the Court may enter judgment against petitioner for the deficiency.
The court has a most liberal discretion in protecting the rights of the parties to the cause and may require a deposit of the petitioner before taking possession that is ample to secure the value of the lands, attorneys fees, maps, photographs, drawings or checks that may be essential to establish value. In contemplating "just compensation" or "full compensation", the court may consider the elements involved in Orange Belt Ry. Co. v. Craver, 32 Fla. 28, 13 So. 444 and Dade County v. Brigham, Fla., 47 So.2d 602. In any condemnation proceeding a jury of twelve men is required and the court has ample power to consider every element of value that would be submitted to a jury in adjudicating the amount of the deposit as a prerequisite to taking possession. This is all the constitution requires.
It follows that the certificate is granted and the constitutional validity of the challenged act is upheld against the assault made on it.
HOBSON, ROBERTS and MATHEWS, JJ., concur.
SEBRING, C.J., and CHAPMAN and THOMAS, JJ., dissent.
SEBRING, C.J., and CHAPMAN and THOMAS, JJ., do not concur because of the view that the question is not properly presented.
HOBSON, Justice (concurring specially).
I have no difficulty in concurring in the opinion prepared by Mr. Justice TERRELL insofar as it determines that Chapter 74, Florida Statutes 1949, F.S.A. is a constitutional enactment. It is clear to my mind that Chapter 74, supra, does not violate the constitutional rights, privileges and guaranties of the property owner but rather meticulously preserves them.
The problem which was given me real concern is whether this is a proper question to be answered by us. Not only does Rule 38 of the Supreme Court Rules of Practice fail to exclude from its operation a question such as this which involves the constitutionality of an act of the legislature but in none of our decisions do I find that we have construed said rule to be inapplicable to such a question. On the contrary, we have indicated that if otherwise the question certified comes within the purview of Rule 38 we will determine it, albeit a consideration of the constitutionality of a given law becomes imperative. Moreover, in at least one case we actually considered and determined a constitutional question. See Cantwell v. St. Petersburg Port Authority, 155 Fla. 651, 21 So.2d 139; Bigby v. Lykes Bros., Inc., 153 Fla. 313, 14 So.2d 565 and Rudisill v. City of Tampa, 151 Fla. 284, 9 So.2d 380.
Section (a) of Rule 38, supra, provides as follows: "When it shall appear to a judge of the circuit court that there is involved in any cause pending before him questions or propositions of law that are determinative of the cause and are without controlling precedent in this State and it is made to appear that instruction from this Court would facilitate the proper disposition of the cause, the circuit court may promptly on his own motion or on motion of either party certify said question or proposition of law to this Court for instruction."
It is shown by the certificate in this case that it appeared to the Judge of the Circuit Court that there is involved in this cause pending before him a question or proposition of law which is determinative of the suit and which is without controlling precedent in this State. It is further obvious *905 from the record that instruction from this Court will facilitate the proper disposition of the cause. Although, as previously stated, we have not by judicial construction excluded from the operation of Rule 38, but indeed have treated as being within its purview, a question which presents the constitutional validity of a legislative enactment, it is my view that we should not indiscriminately entertain and decide questions of this type but, for the benefit of the bench and bar, we should lay down a formula or yardstick which will guide the Judges of the Circuit Courts in determining whether such a question should be certified to this Court under Rule 38.
In my opinion the determination of whether we should answer such a question should rest in the sound judicial discretion of this Court. If we should adopt the practice of answering every constitutional question which might be certified by the Judges of the Circuit Courts, particularly in cases merely involving individual rights, we would not only be guilty of substituting said rule for the right of appeal after determination of the question by the nisi prius court but we would open a flood gate which might unduly add to the almost insurmountable burden of work under which this Court is now laboring. It could conceivably reach such extent as to cause the docket of this Court to become as far behind schedule as it was when the legislature found it necessary to provide a Supreme Court Commission to relieve the congestion. In deciding whether we should answer a question such as the one now presented we should consider primarily whether the question is of great public concern and has attendant upon it exigencies which dictate a speedy decision of the controversy in the interest of the common weal.
With this approach in mind, I have concluded to agree that this question is one proper to be determined at this juncture. The Court is presumed to know that which is known generally and is a matter of common knowledge. Every one knows that our current road program is more extensive in its scope than at any time in the history of Florida, certainly since the administration of former Governor John W. Martin, who may well be designated as the father of the program for good roads in this State. Predicated upon the knowledge of the general public concerning the present expansive road program and its real value to all of Florida we may, and I do, assume, if indeed it is not also a matter of common knowledge, that such program is being detrimentally impeded and employment of many of our good citizens is at least temporarily suspended by the existence of this unsettled question with reference to the constitutionality of Chapter 74, supra.
TERRELL, ROBERTS, and MATHEWS, JJ., concur.